UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HEIDI MUSIC, )
 )
    Plaintiff, )
 )
    v. ) Case No. 3:18-CV-00006-MGG
 )
COMMISSIONER OF SOCIAL SECURITY, )
 )
    Defendant. )

## OPINION AND ORDER

Plaintiff Heidi Music seeks judicial review of the Social Security Commissioner's decision denying her application for Title II Disability Insurance Benefits ("DIB") as allowed under 42 U.S.C. § 423(d). This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B); 42 U.S.C. § 405(g). Music filed her opening brief on May 21, 2018. [DE 14]. The Commissioner responded on June 19, 2018. [DE 16]. The matter is now ripe for adjudication, as Music has neither replied nor sought an extension of time within the 14–days prescribed by Local Rule 7–3(d). For the reasons below, the Court affirms the decision of the Commissioner of the Social Security Administration.

I.    **OVERVIEW OF THE CASE**

Music filed an application for DIB with the Social Security Administration ("SSA") on April 8, 2014, alleging a disability onset date of November 1, 2009. Music's application was denied initially and upon reconsideration. At her request, a hearing was held before an Administrative Law Judge ("ALJ") on December 19, 2016, at which

Music amended her onset date to February 5, 2013.[1] Following the hearing, the ALJ issued a written decision on May 16, 2017, based upon the five-step disability evaluation process prescribed by the SSA's regulations. *See* 20 C.F.R. § 404.1520.

At Step One, the ALJ reviewed internal SSA earnings records and determined that Music—a high school graduate who had worked previously as a dairy farm worker—had engaged in substantial gainful activity between the amended alleged onset date of February 5, 2013, through the end of December 2015. [DE 10 at 23]. As a result, the ALJ stated that "the remainder of this decision pertains to January 1, 2016, through the date of this decision." [DE 10 at 23]. Nevertheless, the ALJ cited to medical evidence dating from as early as March 2012 until August 22, 2016, in his analysis of the subsequent steps in the disability determination.

At Step Two, the ALJ found that Music had the following severe impairments: (1) lumbar spine degenerative disc disease; (2) cervical degenerative disc disease; (3) obstructive sleep apnea; (4) chronic obstructive pulmonary disease ("COPD"); (5) asthma; (6) periodic limb movement disorder; (7) obesity; (8) migraines; and (9) left hand early primary osteoarthritis. At Step Three of the evaluation, the ALJ concluded that Music's impairments did not meet or medically equal the severity of any of the listed impairments.

---

[1] On Music's alleged onset date, she was under the age of fifty and was therefore categorized as a "younger person" for purposes of receiving social security benefits. *See* 20 C.F.R. § 404.1563(c). Prior to the release of the ALJ's decision, however, she turned fifty and therefore became a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d).

2

Before proceeding to Step Four, the ALJ analyzed Music's residual functional capacity ("RFC") and concluded that she retained the ability to perform light work with some limitations. Based on this RFC, the ALJ found that Music is unable to perform past relevant work, at Step Four. At Step Five, however, the ALJ found that, in consideration of Music's age, education, work experience, and RFC, Music can perform a significant number of jobs that exist within the national economy, including office helper, packager, and inspector as those jobs are defined by the Dictionary of Occupational Titles. Based upon these findings, the ALJ concluded that Music has not been under a disability as defined by the SSA, from February 5, 2013, through May 16, 2017, and denied Music's claims for benefits. [*Id*. at 30].

## II. DISABILITY STANDARD

In order to qualify for DIB, a claimant must be "disabled" under the Social Security Act ("Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is

3

capable of making an adjustment to other work. 20 C.F.R. § 404.1520; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**III.  STANDARD OF REVIEW**

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic, or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured

4

the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to grant or deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision to deny benefits [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th. Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th. Cir. 2001).

IV.  **ANALYSIS**

    A.  **Issues for Review**

In challenging the ALJ's decision, Music's concerns focus predominantly on the ALJ's treatment of the medical opinion evidence. She raises arguments arising from two alleged legal errors—(1) the ALJ's failure to comply with the SSA mandate that treating source opinions, like that of Music's family doctor, Debra Sanders, M.D., be given more weight than the opinions of non-treating or non-examining sources and (2) the ALJ's lay

5

analysis of raw medical data, amounting to "playing doctor," which resulted in substantially disregarding Dr. Sanders' professional opinions.

First, Music directs the Court's attention to the ALJ's decision not to give controlling weight to Dr. Sanders' opinions despite having treated with her since before her alleged onset date. Music argues that the ALJ failed to provide good, specific, or supported reasons for discounting Dr. Sanders' opinions and to demonstrate any consideration of the factors set forth in 20 C.F.R. § 404.1527(c), both of which are required by SSA regulations and policies as well as Seventh Circuit precedent.

Second, Music claims that the ALJ substituted his own analysis of medical evidence in the record in determining what weight to give to the medical opinion evidence. As a result, Music contends that the ALJ improperly gave State Agency consultants' 2014 opinions greater weight than that of Dr. Sanders despite their lack of access to Music's medical records in the two years between their opinions and the hearing before the ALJ. Moreover, Music alleges that the ALJ failed to consider medical evidence from January 1, 2016, forward—the period the ALJ deemed relevant.

### B. Legal Standard for Medical Opinion Evidence

Generally, more weight is given to the opinions of treating sources because they are more familiar with a claimant's conditions and circumstances. *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). However, the treating physician's opinion is not the final word on a claim for disability benefits. 20 C.F.R. § 404.1527(d)(2). The treating physician's opinion can be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

6

inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c); *see also* *Sharbeck v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician . . . or when the treating physician's opinion is internally inconsistent as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." (internal citations and quotations omitted)). Furthermore, the Seventh Circuit and this Court have repeatedly recognized that the ALJ is not required to rely entirely on a particular physician's opinion, nor must the ALJ choose between the opinions of any of the claimant's physicians. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *Hannah-Walker v. Colvin*, No. 2:12-cv-61-PRC, 2013 WL 5320664, at *10 (N.D. Ind. Sept. 23, 2013)).

It is well established, however, that the ALJ can reject an examining source's opinion only if his reasons are supported by substantial evidence. 20 C.F.R. § 404.1527(c)(2). When a treating source opinion is not given controlling weight, the ALJ must consider the examining relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinion, consistency with other evidence in the record, specialization of the treating physician, and any other factors that support the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ must provide good reasons in his decision for the weight given to a treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2).

  C. **Weight Given to Dr. Sanders' Treating Source Opinion**

Dr. Sanders, Music's family doctor, opined on June 13, 2014—using a Medical Source Statement ("MSS") form containing several check boxes and fill-in-the-blank

7

spaces—that Music could sit for six or more hours; stand/walk for one hour; needs to alternate positions; does not need to use an ambulatory device; can lift/carry occasionally 10 pounds and rarely 20 pounds; rarely push/pull due to lung function; occasionally balance or kneel; rarely climb, bend, stoop, or crouch; frequently reach, handle, finger, and feel; avoid temperature extremes, dusts, fumes, odors, chemicals, gases, and humidity/wetness. [DE 10 at 403-04]. Additionally, Dr. Sanders indicated in the MSS that Music would be absent from work three days or more per month. [*Id.* at 404]. On the same date, Dr. Sanders also prepared a pulmonary RFC questionnaire, another form that employs check boxes and fill-in-the-blank spaces for the physician's opinion, in which she opined that Music could sit up to six hours a workday and stand/walk less than two hours a workday; she could lift/carry a maximum of 10 pounds; must avoid all exposure to environmental factors; and she would miss more than four days of work a month. [DE 10 at 399-402].

In assessing Music's RFC, the ALJ considered Dr. Sanders' opinions but gave them only little weight finding that she "could sit for at least six hours" but also finding the rest of Dr. Sanders' opinions "appear[ed] a bit too restrictive." [DE 10 at 29]. In support, the ALJ stated:

> During the period in which these opinions were rendered, the claimant's EMG/NCS was normal and her strength and sensation were mostly normal to mild. She was treated for COPD/Asthma, but [her] pulmonary function test was normal. She also has headaches without aura and her medications reportedly helped. The BIPAP machine is also helping with her sleep apnea. In addition, there was some tenderness seen on the left middle finger and some slightly swollen hand joints as well as an x-ray of the left hand that revealed early manifestations of primary osteoarthritis.

8

[*Id*.]. Before reaching this conclusion, the ALJ discussed and cited to several of Music's medical records from around the time in 2014 when Dr. Sanders wrote her opinions. The ALJ cited records of visits with and laboratory testing ordered by Dr. Sanders, her pain management doctor, her pulmonologist, her chiropractor, and a neurologist. The ALJ also cited to the 2014 opinions of two State Agency consultants, J.V. Corcoran, M.D. and Joshua Eskonen, D.O., who stated that Music was capable of light work. The ALJ and gave the opinions of Drs. Corcoran and Eskonen great weight based upon similar normal to mild test results used to support the weight given to Dr. Sanders' opinions. Overall, the records cited reflected medical treatment from about March 2012 through August 2016.

### 1. ALJ's Compliance with SSA Regulations and Policy

Music argues that the ALJ's assessment of Dr. Sanders' opinions constituted legal error because he failed to comply with the SSA's policy of weighing treating source opinions more heavily than other opinion evidence. In support, Plaintiff contends that the ALJ's decision did not acknowledge the SSA's preference for treating source opinions and gave no indication that he had considered the mandatory Section 1527(c) factors.

Admittedly, the ALJ did not explicitly recite the legal standard requiring him to give controlling weight to the treating source's opinion unless the opinion was not well supported in the record or consistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c); *see also Sharbeck*, 390 F.3d at 503. In fact, the ALJ did not even state what standard he applied in his evaluation of the medical opinion evidence, including

9

Dr. Sanders' treating source opinions. However, Music cites no authority requiring the ALJ to explicitly cite the applicable legal standard. Without more, the Court cannot find error in the ALJ's lack of reference to the SSA's preference for treating source opinions. Instead, the Court must review whether the ALJ minimally articulated his reasons for discounting Dr. Sanders' opinions. *See Sharbeck*, 390 F.3d at 503.

To accomplish that, the Court focuses on the SSA's regulations that must guide an ALJ's analysis. First, the regulations require an ALJ to give a treating source's medical opinion more weight than it would a nontreating source's opinion "[w]hen the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment . . .[and w]hen the treating source has reasonable knowledge of [the claimant's] impairment(s)." 20 C.F.R. § 404.1527(c)(2)(ii). Music does not claim error here, and admits that the ALJ made no allegation that Dr. Sanders lacked "reasonable knowledge" of her impairments or that Dr. Sanders had not seen her "long enough to [obtain] a longitudinal picture" of her impairments. *See id.*

Second, the regulations require an ALJ to consider the following factors when a treating source opinion is not given controlling weight: (1) the examining relationship, (2) the treatment relationship, specifically its length, nature, and extent, of the treatment relationship, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialty of the treating source. 20 C.F.R. § 404.1527(c). The ALJ's opinion never explicitly mentions all these factors. However, the ALJ started his discussion of Dr. Sanders' opinions by identifying her as Music's family doctor, a

clear reference to her professional specialty. The ALJ also cited multiple times to Dr. Sanders' treatment and examination notes in discussing Music's RFC. In so doing, the ALJ implicitly demonstrated his understanding of the length, nature, and extent of Music's treatment with Dr. Sanders as well as the frequency of Dr. Sanders' examinations of Music. Moreover, the ALJ's cited to Music's medical records from 2012 into 2016 showing the extent to which Dr. Sanders' opinions were supported. Relying on the same scope of evidence, the ALJ demonstrated inconsistencies between Dr. Sanders' opinions and the record as a whole. Thus, the Court is not persuaded that the ALJ ignored the Section 1527 factors.

Music clearly disagrees with the weight the ALJ gave to Dr. Sanders' opinions. However, nothing in the ALJ's decision suggests that the ALJ improperly ignored the SSA's preference for treating source opinions or the Section 1527 factors relevant when discounting a treating source opinion. In fact, the ALJ supported his decision to give little weight to Dr. Sanders' opinions with substantial evidence showing inconsistencies between Dr. Sanders' restrictive opinion and other medical evidence in the record.

More specifically, the ALJ referenced Dr. Sanders' own treatment notes from June 13, 2014, the same day she completed the MSS form, describing her physical exam of Music as normal. The ALJ also highlighted reports by the State Agency consultants relying upon normal physical examinations. Furthermore, the ALJ cited normal results from an early brain MRI and MRA, an EMG of the lower extremities, and a pulmonary function test as well as several physical examinations assessing her gait, walk, posture, range of motion, and lungs.

By referring to this specific medical evidence, the ALJ effectively indicated that the basis for his decision to discount Dr. Sanders' opinions was the inconsistencies between the restrictive opinion of Dr. Sanders and the documented normal to mild findings in the medical record. Thus, it can easily be inferred from the ALJ's decision that he gave Dr. Sanders' opinions little weight because they were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with other substantial evidence in the record.[2] *See* 20 C.F.R. § 404.1527(c). In other words, the ALJ sufficiently articulated a logical bridge from the evidence in the record to the discounted weight given to Dr. Sanders' opinions. As such, the ALJ's decision to give little weight to Dr. Sanders' opinions is supported by substantial evidence.

## 2. ALJ's Analysis of Medical Evidence

An ALJ must base his disability determination "on testimony and medical evidence in the record rather than "succumb[ing] to the temptation to play doctor and make [his] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (citations omitted). Here, Music argues that the ALJ improperly rejected Dr. Sanders' opinions by conducting his own lay analysis of the raw medical data in the record or by "playing doctor." In support, Plaintiff contends that the ALJ (1) did not account for considerable evidence consistent with Dr. Sanders' opinions, (2) gave the State Agency consultants' opinions greater weight than Dr. Sanders' opinions despite

---

[2] Although not central to the ALJ's decision to discount Dr. Sanders' opinions, his Step One finding that Music engaged in SGA between 2013 and 2015 also undermines Dr. Sanders' opinions that Music was disabled and could not work in 2014 when Music was engaged in SGA.

the fact that they opined in 2014 without access to about two years' worth of subsequent relevant evidence, and (3) offered no persuasive reason for preferring the consultants' non-examining opinions over Dr. Sanders' opinions. Plaintiff argues that taken together, this conduct by the ALJ amounts to improperly "playing doctor" rather than relying on the opinion of Dr. Sanders who identified Music's functional limitations, especially those regarding standing and walking. The Court is not persuaded.

First, there is no doubt that the ALJ did not cite to all the evidence in the record, not even to all the evidence Music delineated in approximately eight pages of her brief. [*Compare* DE 10 at 23–29, *with* DE 14 at 12–20]. Yet nothing requires an ALJ to reference every piece of supporting evidence from the record in his decision if he meets his obligation to develop the record before rendering his decision. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). Here, the ALJ's decision may not have documented all the evidence in the record but it did cite to medical evidence showing normal test results and examinations as discussed above. In so doing, the ALJ successfully explained that he discounted the weight given to Dr. Sanders' opinions because of its inconsistency with other medical evidence in the record. Said another way, the ALJ built a logical bridge from the normal medical findings in the record to his conclusion that the disabling limitations identified in Dr. Sanders' were too restrictive even without explicitly noting all the evidence in the record.

Second, Music's challenge to the weight given to the State Agency consultants' opinions is misplaced. In his decision, the ALJ supported his disability determination based in part on the great weight given to the opinions of the State agency medical

13

consultants, Drs. Corcoran and Eskonen, both of whom opined that Music was limited to performing light work. Dr. Corcoran prepared his RFC assessment on September 9, 2014 [DE 10 at 97–105], and Dr. Eskonen prepared his on December 17, 2014 [DE 10 at 107–13]. The ALJ found that their opinions regarding Music's functional limitations were supported by the clinical and laboratory medical evidence available to them. By citing to such evidence, the ALJ explained why he weighted their opinions greatly and thus supported his conclusion with substantial evidence. While not explicitly explaining why he preferred their opinions over Dr. Sanders' opinions, the ALJ satisfied his obligation to "evaluate every medical opinion" in the record having considered the same Section 1527(c) factors relevant to his treating source opinion analysis. *See* 20 C.F.R. § 1527(c).

Yet Music still argues that the medical opinions of Drs. Corcoran and Eskonen should not have been given great weight by the ALJ, and certainly not more weight than the opinion of her treating physician, Dr. Sanders, because their opinions predate the relevant period under consideration by the ALJ—January 1, 2016 through May 16, 2017. Music asserts that the ALJ erred in this regard because Drs. Corcoran and Eskonen did not have the benefit of reviewing two years of relevant medical evidence between 2014 and 2016. Music acknowledges that the 2014 opinions in the record were reasonable at the time they were made but contends that the ALJ should have taken steps to secure updated opinions that took into consideration the updated medical evidence between 2014 and May of 2017. While it is certainly true that Drs. Corcoran and Eskonen provided opinions in 2014, before the January 1, 2016, date the ALJ

14

determined to be relevant based on Music's SGA through 2015, the opinion of Music's treating physician, Dr. Sanders, was also prepared in 2014. In fact, Dr. Sanders' opinions were rendered three to six months before the Corcoran and Eskonen opinions. Therefore, all the medical opinions were rendered prior to the period deemed relevant to Music's social security claim.

Additionally, Music could have provided an updated opinion from Dr. Sanders for the period between her original opinions in June 2014 and the ALJ hearing in December 2016, but chose not to do so. Music's failure to request an updated opinion cannot be held against the ALJ as it is the claimant's burden to prove she is disabled. *See* 20 C.F.R. § 404.1512(a). And that burden required Music to keep the ALJ informed with "disclos[ure] of any additional related evidence about which [she] became aware. *Id.* The ALJ's decision cannot be questioned when Music failed to meet her burden.

Furthermore, the ALJ did not ignore post-January 2016 evidence when making his decision. The ALJ actually referenced examinations and scans with Music's orthopedic doctor, chiropractor, and pulmonologist throughout 2016. Based upon this evidence, the ALJ included "additional limitations [than those opined by Drs. Corcoran and Eskonen] to account for the more updated findings on [Music's] cervical and lumbar spine scans, the claimant's reports of headaches, occasional positive straight leg raising, limited range of motion of the spine and difficulty breathing." [DE 10 at 28]. By adding restrictions beyond those recommended by Drs. Corcoran and Eskonen, the ALJ demonstrated that he considered all medical evidence in the record at the time of his

15

decision, including evidence that was unavailable to Drs. Corcoran, Eskonen, and Sanders at the time that each rendered his or her opinion.

Moreover, Music failed to develop fully her argument that the medical opinions were deficient because they were given before the ALJ's January 2016 onset date. Music neither supported her claim with authority nor provided any updated medical evidence for the record. Music simply alleges that the ALJ based his decision on his own judgment rather than the medical evidence in the record, and then provides a list of options available to the ALJ for supplementing the medical record. Although Music contends that the ALJ did not consider medical evidence from the relevant period, this assertion ignores the many references to examinations, tests, and scans from 2016 that the ALJ referenced in his decision. The ALJ is obligated to develop the record before rendering a decision but is not obligated to reference every piece of supporting evidence in his decision. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010). Here, the ALJ demonstrated consideration of the available evidence in the record, including examinations and laboratory results from 2016, and based his decision upon this substantial evidence. Additionally, the ALJ's decision cites medical evidence without offering any medical opinion on that evidence. *See Herron v. Shalala,* 19 F.3d 329, 334 n. 10 (7th Cir.1994) (finding that an ALJ did not make an improper medical finding because he "did not include his medical opinion in the disability determination [and] stated only that [the claimant's] complaints of pain found no support in the objective medical evidence."). As a result, the ALJ built a logical bridge between the

16

evidence in the record and his decision to deny benefits to Music without "playing doctor" as Music contends.

V.     CONCLUSION

For the reasons stated above, this Court concludes that the ALJ built a logical bridge between the evidence and his conclusions regrading Dr. Sanders' medical opinion and provided more than a mere glimpse into his reasoning based upon the evidence in the record. The ALJ complied with the established federal regulations and used the proper legal standards to release a decision that was supported by substantial evidence. Accordingly, Music's appeal of the Social Security Administration's decision denying her application for Disability Insurance Benefits is **DENIED**. The Commissioner's decision is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgement in favor of the Commissioner.

**SO ORDERED** this 18th day of March 2019.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge